IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| TATYANA A. BABAKAEVA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.: 4:09cv58 |
| | ) |
| PAUL H. WILSON and | ) |
| WILSON & WILSON, P.C., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Defendants Paul H. Wilson and Wilson & Wilson, P.C., hereby move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure:

**I.       INTRODUCTION**

The Plaintiff filed this seven count Complaint on June 8, 2009. It arises from the Defendants' representation of the Plaintiff in her divorce action in Hampton Circuit Court. Summary judgment is warranted on six counts, at least five of which are patently frivolous.

The Plaintiff's claims are as follows: Count One asserts breach of the Virginia Consumer Protection Act, Va. Code § 59.1-197; Count Two asserts legal malpractice and breach of contract; Count Three asserts defamation *per se*; Count Four asserts conversion of escrow funds; Count Five asserts breach of fiduciary duty in the Defendants' acceptance and holding of escrow funds; Count Six alleges fraud in that Defendants falsely represented to Plaintiff that a court order existed mandating that the Defendants withhold escrow funds from the Plaintiff and Count Seven alleges a civil conspiracy between the Defendants and Bryan Schempf, counsel for Nikolai Sinkine, Babakaeva's ex-spouse.

As of the spring of 2007, Plaintiff's divorce matter had been pending approximately 15 months. Her spouse was represented by Bryan Schempf, a Newport News attorney and partner in the law firm of Jones, Blechman, Woltz & Kelly. Schempf filed an attorney charging lien with Hampton Circuit Court on March 1, 2007, informing Babakaeva of the possibility that his fees would be paid from his client's portion of proceeds resulting from the anticipated sale of their marital residence. To this point, Babakaeva had been representing herself *pro se*. Concerned about the potential impact of the attorney charging lien on her share of the proceeds and other matters, Babakaeva retained Paul Wilson to represent her. The sale of the marital residence was consummated in April of 2007. After an initial partial distribution of the proceeds to Babakaeva and Sinkine, the parties agreed that Wilson would retain the remaining proceeds in the amount of $92,291.07 in an escrow account pending distribution of the marital assets.

The gravamen of Babakaeva's ultimate dissatisfaction with Wilson was her belief that Wilson and Schempf conspired with each other to "divert" money from the escrow funds held by Wilson to ensure the complete payment of Schempf's legal fee. In fact, Wilson held the escrow funds at all times relevant to this matter pursuant to a valid order from Hampton Circuit Court. All of these funds were paid to Babakaeva when, after the parties could not agree as to distribution and no further order was issued, Wilson filed an interpleader action with Hampton Circuit Court. No monies were diverted to Schempf, Wilson or anyone else. Babakaeva has not and cannot present any evidence that Wilson committed legal malpractice, defamed her, improperly withheld funds, conspired with Schempf or engaged in fraud to divert or improperly withhold funds. Summary judgment is warranted on Counts Two through Seven.

## II.   DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1.   Babakaeva retained Wilson pursuant to a written retainer agreement on or about March 15, 2007. Amended Complaint, ("Am. Compl.") ¶ 15; Exhibit 1, Wilson/Babakaeva representation agreement dated March 15, 2007.

2.   Wilson performed significant work throughout the relationship. Babakaeva is a foreign national and her language challenges meant that Wilson spent considerable time answering questions and explaining the legal system to Babakaeva.

3.   The marital house was sold prior to the final hearing scheduled to address the primary issues in the divorce. See Am. Compl., ¶¶17-19.

4.   Prior to the final hearing, Babakaeva's former spouse, Nikolai Sinkine, requested a partial release of the proceeds of the sale to finance his simultaneous purchase of another house. At the time, Sinkine's maximum share was estimated to be approximately $28,000, and Babakaeva agreed to the partial release of the proceeds from the sale of the marital residence in that amount. Am. Compl. ¶17.

5.   Wilson drafted an agreement which was endorsed by both parties to the divorce action authorizing payments of $28,000 each to Babakaeva and Sinkine. The agreement provided that the remainder of the proceeds in the amount of $92,291.07 would be held by Wilson pending the outcome of the divorce action. Wilson Declaration at ¶3, Schempf Declaration at ¶3. Accordingly, the amount of $92,291.07 ("Escrow Funds") was transferred to Wilson's trust account. *Id.* This sum correctly and accurately accounted for and constituted the entirety of the remaining proceeds from the sale of the marital residence. *Id.*

6.   A hearing was held to resolve all primary issues of the divorce on May 24, 2007. Am. Compl. ¶22; *see* Hearing Transcript of May 24, 2007, submitted herewith.

7. Midway through the May 24, 2007, hearing, the parties reached agreement as to the distribution of the Escrow Funds. Wilson Declaration at ¶7, Schempf Declaration at ¶9. Babakaeva reneged on the agreement and refused to allow the order to be entered. *Id.* As a result, subsequent hearings were needed and Wilson withdrew as counsel. *Id.* Babakaeva substituted new counsel, Jeffrey Tarkington, in the place of Wilson. Wilson Declaration at 7.

8. The Hampton Circuit Court entered an order directing Wilson to withhold the Escrow Funds "until further order of the Court." See Decree of Divorce dated June 19, 2007, Exhibit 2. Wilson wrote the parties' respective counsel after withdrawing from the case in an attempt to have one of them take control of the Escrow Funds. Wilson Declaration at ¶10; letter from Wilson to counsel dated September 19, 2007, Ex. 3. He received no response. *Id.*

9. No further orders were issued and the parties were unable to reach any agreement on the matter until the late fall of 2009 after the Defendants filed their complaint for interpleader in the Hampton Circuit Court. Wilson Declaration at ¶11.

10. The interpleader action was filed on November 4, 2009. Complaint for Interpleader, Ex. 5. The Escrow Funds were tendered to Hampton Circuit Court on that date and on November 24, 2009, Hampton Circuit Court issued an order accepting the interpleaded funds. Order dated November 25, 2009, Ex. 6.

11. On December 8, 2009, Sinkine filed a Declaration disclaiming any interest in the interpleaded funds. Sinkine Declaration, Ex. 7. Inexplicably, Babakaeva fought the interpleader action every step of the way, even after Sinkine disclaimed his interest. See, *e.g.*, Babakaeva's Answer and Motion and Notice to Vacate Interlocutory Order of November 25, 2009 filed by Babakaeva, *pro se*, Exs. 8 and 9.

12. On March 26, 2010, the court entered an order paying Babakaeva the interpleaded Escrow Funds in the amount of $92,291.07. Order dated March 26, 2010, Ex. 10. The funds remained in Wilson's Trust Account until that time. Wilson Trust Account Records, Ex. 4.

13. The only discussion or type of discussion arguably relating to Babakaeva's Defamation *Per Se* claim appears at pages 88-92 of the May 24, 2007, hearing transcript. The court brought up the issue of child custody, *sua sponte*. In the course of arguing that his client should retain sole custody, Wilson noted that she was "subject to deportation." *Id.* It is clear in the context of the transcript that Wilson was making representations based on what his client had told him and what he believed to be in her and her child's best interest. *Id.* It is clear that he was attempting to bolster the argument not to disturb the previous sole custody ruling because such a ruling would be of assistance to her with federal immigration authorities. *Id.* At the very least, it is clear that Wilson's representations were made in the course of his duties representing Babakaeva. *Id.*

14. Immediately after Wilson's representation concerning possible deportation, the court engaged Babakaeva in a colloquy in which the judge expressed his sincere hope that she would not be deported, she made no attempt to correct the judge's obvious belief that a deportation hearing was imminent. May 24, 2007, Hearing Transcript at 91-92. Babakaeva then took the witness stand after Wilson's statements and made no attempt to correct her counsel's representations and the court's understandings about possible deportation. *Id.*

15. Neither Wilson, Wilson & Wilson, P.C. nor Bryan Schempf engaged in any "conspiracy" and there was never any unprofessional request made between or among counsel. Wilson Declaration at ¶12; Schempf Declaration at ¶12. Wilson never agreed to protect

Schempf's interest in the Escrow Funds for fee recovery and Schempf never made such a request to Wilson. *Id.*

16. Babakaeva has neither presented nor articulated any evidence supporting her theories of conspiracy or fraud.

### III. ARGUMENT

Summary judgment is warranted on Counts Three through Seven, inclusive, and those portions of Count Two asserting legal malpractice.[1] Babakaeva cannot demonstrate a material disputed fact on any of these claims.

### A. Count Two: Babakaeva Cannot Prove Legal Malpractice.

In Count Two, Babakaeva asserts that Wilson failed to meet his professional duties to the Plaintiff and that he represented her negligently. In paragraph 88 of the Amended Complaint she delineates each instance in which she alleges Wilson failed to meet his professional duties. These are claims of professional malpractice. In order to prove legal malpractice in the context of Babakaeva's allegations in this case, she must identify the duties owed by the Defendants and the manner in which they were breached through expert testimony. *Heyward and Lee Construction Co., Inc. v. Sands, Anderson, Marks, Miller*, 249 Va. 54, 57 (1995); *Seaward Int'l, Inc. v. PriceWaterhouse*, 239 Va. 585, 592 (1990). Babakaeva has identified no expert witness who will testify in this case. She has presented no expert report in accordance with Fed. R. Civ. P. 26 and the applicable scheduling order.

---

[1] With respect to the deceptive billing practices count (Count One) and to the extent the breach of contract claim seeks damages for improper billing, Wilson's suit for legal fees will be tried on April 29, 2010 in Newport News Circuit Court. Babakaeva has asserted as defenses in that matter that the billing was improper and violated applicable law, essentially the same assertions she has made in this case. The Newport News Circuit Court's decision in that case, depending on the assertions and evidence presented, will likely constitute *res judicata* precluding any recovery regarding the improper billing claims.

6

Even if she had properly identified an expert, the May 24, 2007, hearing transcript and subsequent orders eviscerate any claim of legal malpractice. A thorough review of that transcript reveals no evidence of malpractice. The trial as memorialized in the transcript rebuts any such claim. The only witness other than Wilson and Babakaeva in attendance at the May 24, 2007, hearing expected to testify in this trial is Bryan Schempf. Schempf's and Wilson's testimony, as set forth in their Declarations, further contradict Babakaeva's allegations. Schempf's testimony is that: 1) Wilson's conduct was professional and effective at all times during the trial and, indeed, at all times in his representation; 2) Wilson never attempted to abrogate Babakaeva's custody rights; 3) the mention of the deportation issue was only made to advance Babakaeva's interests and 4) Schempf had information from his own client that Babakaeva faced a risk of deportation. Schempf Declaration at ¶ 6. Moreover, Babakaeva substituted in new counsel who asserted all arguments she claimed Wilson had not before a final decree was ever issued. There is no material dispute on this point and summary judgment in Wilson's favor is appropriate.

**B.  Count Three: Wilson's Statements were not Defamatory and were Protected by Judicial Immunity.**

The only comments ever made by Wilson related to the Plaintiff's immigration status appear between pages 89 and 92 in the divorce hearing transcript of May 24, 2007. They were made in open court with Babakaeva a few feet away. The court immediately and directly engaged Babakaeva in a colloquy in which the judge expressed his hope that Babakaeva would not be deported. Hearing Transcript at 91-92. She made no attempt to correct the judge's obvious belief that deportation was potentially imminent. *Id.* In addition, it is worth noting that the Plaintiff took the stand after these alleged representations and made no attempt to correct them.

7

It is clear that Wilson made these representations believing in good faith that they were true and advanced his client's interests. See Wilson Declaration at ¶5; Schempf Declaration at ¶6. These statements were made in a courtroom during the course and scope of Wilson's representation of the Plaintiff. *Id.* The United States Supreme Court has defined the scope of immunity for statements made in court:

> At common law, all statements made in the course of a court proceeding were absolutely privileged against suits for defamation. Thus, an ordinary witness could not be sued at all; a complaining witness (i.e., the private party bringing the suit) could be sued for malicious prosecution but not for defamation. This immunity did not turn upon the claimant's status as a public or judicial officer, for it protected private parties who served as witnesses even as prosecuting witnesses. The immunity extended, however, only against suits for defamation.[2]

*Burns v. Reed*, 500 U.S. 478, 501, 111 S.Ct. 1934, 1954 (1990).

It is clear that common law judicial immunity extends beyond witnesses to lawyers as well. *Burns*, 500 U.S. at 489-490. Wilson's comments regarding deportation enjoy the protection of judicial immunity. At the very least, Wilson made these statements while discharging his duties to Babakaeva as her counsel. This will at least invoke the protection afforded by the doctrine of qualified immunity and require that Babakaeva present evidence that these statements were made with malice. *Id.* She can present no such evidence.

    C.    **Count IV: Babakaeva's Conversion Claim is Not Viable.**

Babakaeva has acknowledged that the June 19, 2007, order of the Hampton Circuit Court requiring Wilson to hold the Escrow Funds was not amended, countermanded or otherwise changed as of September, 2009, well after this suit was filed. See Babakaeva's response to

---

[2] The *Burns* court favorably cites and defines common law judicial immunity against suits for defamation. It goes on to note that the doctrine did not apply in that case because it involved a prosecutor who was not sued for defamation.

Wilson Request for Admissions, Ex. 11.  In September of 2007, Wilson wrote to Babakaeva's new counsel and Schempf asking to be relieved of the funds.  Wilson Declaration at ¶10; Wilson correspondence of September 17, 2007, Ex. 3.  The parties were not cooperating at the time and Wilson never heard from Sinkine.  *Id.*

In late fall of 2009, Wilson filed the interpleader action and the Escrow Funds were subsequently paid to Babakaeva as a result of that action.  It was only after the filing of the interpleader action that Sinkine, Babakaeva's former spouse, disclaimed any interest in the Escrow Funds.  The Hampton Circuit Court entered the interpleader order in March of 2010 and the funds were paid out to Babakaeva in total.  No funds from the proceeds of the sale of the marital residence were retained by Wilson or diverted by him to any other purpose.  Wilson Declaration at ¶12; Schempf Declaration at ¶12;  Final Pretrial Stipulations, ¶¶4 -6.

**D.    Counts V and VI:  It is Clear that Wilson Met His Duties with Respect to Holding and Protecting the Escrow Funds and that there was no Fraud.**

These Escrow Funds have now been paid to Babakaeva in full.  The Defendants' representation that a court order required them to hold the Escrow Funds was, in fact, true.  As a result, Counts Five (Breach of Fiduciary Duty) and Six (Fraud) must be dismissed.  These counts were based entirely on the Plaintiff's misguided belief that Wilson either had no authority to continue to hold the Escrow Funds and/or that he had "diverted" them to an improper purpose.  It should be noted that fraud must be demonstrated by clear and convincing evidence.  Babakaeva's allegations of fraud certainly cannot meet this elevated standard.

**E.    Count VII:  There is No Evidence of Conspiracy.**

Babakaeva has advanced no evidence of the existence of any conspiracy between Wilson and Schempf.  Both Wilson and Schempf deny these allegations.  Wilson Declaration at ¶12; Schempf Declaration at ¶12.  Not only does Babakaeva have no affirmative evidence of any

9

conspiracy, she has no way of even slightly impeaching the statements of Wilson and Schempf. Her central allegations of this case accuse Wilson and Schempf of conspiring to "divert" Escrow Funds to the payment of Schempf's legal fees. Not one dime was so diverted and all of the proceeds from the sale of the marital residence in the amount of $92,291.07 were paid to Babakaeva as a result of the Hampton Circuit Court's March, 2007, order on the interpleader action. Wilson Declaration at ¶¶11 - 12; Schempf Declaration at ¶12.

## IV.   CONCLUSION

For the reasons set forth above, the Defendants Paul H. Wilson and Wilson & Wilson, P.C. respectfully request that this Court dismiss Counts III through VII, inclusive, and those portions of Count II alleging legal malpractice. In addition, the Defendants move for payment of their costs and fees incurred in defending against these Counts.

Respectfully submitted,

**PAUL H. WILSON and WILSON & WILSON, P.C.**

By:   */s/ James H. Shoemaker, Jr.*
James H. Shoemaker, Jr. (VSB 33148)
Patten, Wornom, Hatten & Diamonstein, L.C.
Suite 300
12350 Jefferson Avenue
Newport News, VA  23602
Tele:  (757) 223-4580
Fax:  (757) 223-4518
jshoemaker@pwhd.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on April 21, 2010, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following. I also served a true copy of the foregoing via hand delivery on:

>Tatyana Babakaeva
>2124 Criston Drive
>Newport News, VA  23602
>
>*Plaintiff, appearing pro se*

>*/s/ James H. Shoemaker, Jr.*
>James H. Shoemaker, Jr. (VSB 33148)
>Patten, Wornom, Hatten & Diamonstein, L.C.
>Suite 300
>12350 Jefferson Avenue
>Newport News, VA  23602
>Tele:  (757) 223-458o
>Fax:   (757) 223-4518
>jshoemaker@pwhd.com
>*Counsel for Defendants*