RECEIVED
2010 MAY -3 P 3: 38
CLERK US DISTRICT COURT
NEWPORT NEWS, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

TATYANA A. BABAKAEVA, )
                                  )
           Plaintiff, )
                                  )
v.                              )        Action No. 4:09cv58
                                  )
PAUL H. WILSON and )
WILSON & WILSON, P.C., )
                                  )
          Defendants. )

## MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to the Order entered on April 22, 2010 Plaintiff, Tatyana A. Babakaeva, *pro se*, ("Babakaeva") respectfully submits this Memorandum In Opposition to Defendants' Motion for Partial Summary Judgment.

### INTRODUCTION

Defendants Wilson & Wilson, P.C. and Paul H. Wilson (Collectively, "Wilson") jointly moved for partial summary judgment on Babakaeva's causes of action II-VII. Defendants' motion should be denied for two reasons: Babakaeva has adduced evidence sufficient to create a genuine factual dispute on each element her claims; and Defendants are wrong as a matter of law on the central legal issues of their contentions.

Defendants do not assert any facts and/or arguments in support of affirmative defenses. Therefore, to prevail on their Motion for Partial Summary Judgment, Wilson must establish that Babakaeva is not entitled to relief under any of the alternative theories presented by the First Amended Complaint ("Complaint") for each of the causes of action. Wilson does attempt to make such showing, instead making argument that under some possible interpretations of the

claims Babakaeva would not be able to present sufficient evidence to create a genuine issue of material fact. As demonstrated in supporting memorandum brief filed with Babakaeva's Cross-Motion for Partial Summary Judgment, this Wilson's contention is wrong.

### BABAKAEVA'S STATEMENT OF MATERIAL UNDISPUTED FACTS

Babakaeva has set forth her Statement of Material Undisputed Facts in her contemporaneously filed Memorandum in Support of Babakaeva's Cross-Motion for Partial Summary Judgment and incorporates the same herein by reference, together with the supporting declarations and exhibits.

### RESPONSE TO WILSON'S STATEMENT OF ALLEGED UNDISPUTED FACTS

Wilson did not aver that their allegedly undisputed facts ("Wilson' Facts") are material to the claims and/or issues involved in this action. Some of the Wilson's facts, even if proved to be true, will not support their case.

Babakaeva specifically disputes the following Wilson's alleged undisputed facts:

2. Wilson's statement of alleged fact in Paragraph 2 is immaterial to any issues involved in this action. While this alleged fact is rather debatable, Babakaeva did not claim any damages for any occurrences covered by this Wilson's statement of alleged fact. Wilson's statement regarding purported legal services (Exhibit 2, WILSON 10-17[1]) does not show significant time spent on "explanation of legal system".

5. Babakaeva does not oppose to Wilson's alleged Fact No. 5 that "[t]his sum was correctly and accurately accounted for" at the time of transfer to Wilson's free business checking account, and she adds evidence that is was accurately recorded by the bank as "Babakaeva

---

[1] The citation to references refer to the corresponding Exhibits attached to Babakaeva's Memorandum in Support of Cross-Motion for Partial Summary Judgment filed contemporaneously.

proceeds" (Exhibit 2, WILSON 62), and in Wilson's accounting as "Babakaeva – Trust" (WILSON 1).

7. This statement of allegedly undisputed fact is defective in that it is correctly implies that no enforceable agreement existed, which makes any evidence of an alleged unenforceable "agreement" is inadmissible. Even if parties had reached an agreement and even if evidence of such agreement is admitted, the alleged fact of existence of such agreement would be irrelevant because the record shows that Paul H. Wilson represented to the Court that "counsel reached a compromised position" and then fully explained that compromised position.

No reference to a purported agreement between parties were made either in the divorce proceedings, or by Wilson/Shempf's declarations, and no evidence of relation of the counsel's compromised position to the alleged agreement is offered and/or proffered.

Under Va. Code §20-155 a property agreement between married persons must be either in writing or in the form of agreed Order signed by the both parties. Both declarations plainly state that represented parties reached agreement but a written agreement or signed stipulated Order was never produced, and Wilson does not allege that such document was ever in existence.

8. Paragraph 8 of Wilson's Facts alleges separate unrelated occurrences and is completely disconnected with the documentary evidence. Decree of Divorce was entered between Babakaeva and Sinkine and does not bind any third party. Wilson does not cite to any legal authority which would modify the clearly established principle that Decree of Divorce is binding only on the parties to the divorce. Wilson does not aver existence of any other Order with the alleged effect. Therefore, it is improper to offer the contention that "Wilson was under Court Order" as an undisputed fact. Further, the statement that "[Wilson] received no response" is misleading and it is contradicted by the document which Wilson produced in discovery and admitted as true. Wilson received response from Tarkington on or about October 3, 2007

(Exhibit 2, WILSON 74) requesting to transfer money, but Wilson subsequently ceased communication.

9. The statement of fact is correct to the extent that no dispositive orders were issued by the divorce Court after the final Decree. Indeed, after 21 days upon entry of the final Decree of Divorce the Court lacked jurisdiction over property matters pursuant to Rule 1:1 and Va Code 20-17.3(k). Moreover Sinkine's tangent property rights in "Babakaeva proceeds / Babakaeva -Trust" extinguished upon entry of the Decree of Divorce[2], therefore the speculation about hypothetical parties' "agreement on the matter" is irrelevant.

Sinkine's declaration should be considered in the context of the circumstances. It was already the third lawsuit filed against Sinkine for money in which Sinkine did not and could not have any beneficial interest[3], and had did not claim such interest after divorce. Upon divorce, Sinkine, acting by counsel, abandoned any interest in the funds (Bab. Decl. Ex. 5).

10. Statement of Paragraph 10 alleging that Escrow Funds were tendered to Hampton Circuit Court is not supported by evidence. Indeed, money from an unknown source was paid to the Court registry. However, the origin and character of the funds is not shown by any accounting records. The allegation of relation between the money paid to the Court and the funds transferred to Wilson as Babakaeva proceeds is based purely on the observation that the two amounts coincide[4]. There is no any direct or circumstantial evidence that the money paid to the Court constitute or is traceable to Funds. Moreover, on November 20, 2009 Paul H. Wilson

---

[2] "Upon the entry of a decree of divorce from the bond of matrimony, all contingent rights of either consort in the real and personal property of the other then existing .... shell be extinguished ..." Va Code § 20-111.

[3] In the lawsuit of attachment in which Schempf obtained order attaching the whole amount of Funds as Sinkine's property, Sinkine was a nominal party (Exhibit 14). After dismissal of the first action, Schempf filed another action with the identical claim, again demanding payment from the proceeds of sale of the real estate.

[4] The fact that amount tendered by Wilson to the Court coincides with the amount transferred to Wilson two and a half years earlier indicates that the earnings on the investment are missing. Wilson did not pay any interest on Funds.

certified by his written statement under oath that the check tendered to the Hampton Circuit Court was not debited to Babakaeva's trust Funds (Exhibit 5 at 19).

Further, the statement of alleged fact no. 10 is silent about the fact that the service of process in the action for interpleader was executed on December 3, 2009, more than a week after entry of the November 25 Order. The order is void as to both defendants to the interpleader action: although the Court declined to vacate the void order in its entirety, it clearly stated that the order is not to be used adversely to Babakaeva (Doc.65-10 at 1). Accordingly, it is improper to use the November 25, 2009 Order as evidence against Babakaeva.

11. On December 8, 2009, Sinkine filed Declaration disclaiming any interest in the lawsuit. Other allegations are speculations rather than facts. In the interpleader action Wilson was unable to show, and even to aver, existence or possibility of any conflicting claims[5]. Further, March 26, 2010 Order clearly states that the November 15 Order is "not adverse to Babakaeva". The Order granting Babakaeva's Petition for Payments does not say that Wilson accounted for funds and does not state that interpleader was proper, which was obviously not. The speculation that "inexplicably, Babakaeva fought the interpleader action even after Sinkine disclaimed his interest" is irrelevant.

12. Wilson assert that "the funds remained in Wilson's Trust Account until [March 26, 2010]", and cite to Wilson's Exhibit 4 designated "Wilson Trust Account Records". Wilson's Exhibit 4 represents bank statements of the SunTrust free business checking account, which statements are not authenticated. Even if this fatal defect in the proposed exhibit may be assumed to result from inadvertence, the statements do not establish how the records pertain to

---

[5] As the only evidence of allegedly "conflicting" claims to Funds, Wilson submitted joint letter of trust settlors Babakaeva and Sinkine's demanding return of the whole amount of funds with the accrued interest to both donors. No claims exceeding that amount have been ever made. Interpleader action is proper only when the claims are conflicting, i.e. when the sum of the claims exceeds the value of the stake.

Babakaeva's property. Moreover, the period covered by this exhibit ended in September 2009, more than six month before March 26, 2010 and two months before Wilson paid money to the Court.

13. The alleged statement of fact 13 confuses unrelated issues. Wilson's defamatory statement to the Court about Babakaeva's deportation made in the May 24, 2007 trial has been brought by Babakaeva in connection with the claim for breach of duty under the contract, and not with the claim for recovery of damages for defamation *per se*.

Babakaeva is seeking to recover damages for the defamatory statements which were published to different audience at a later time, by Wilson's letter to the Bar Counsel (Exhibit 2, WILSON 26-28). Wilson's Motion is silent about this occurrence, which is therefore a triable issue for the purpose of this opposition memorandum.

In regard of custody, the Court did not bring the issue *sua sponte*, but rather routinely went through the checklist of issues to be resolved in any divorce[6]. The transcript of proceeding shows that the issue was raised by Wilson (Doc. 65-12 at 89:16-17). Instead of advising that the custody had been adjudicated by the previous Court's Order and that no party was seeking modification, Wilson requested re-litigation of the custody issue. No evidence of change of circumstances existed, and Sinkine did not and could not request modification of custody. No evidence was offered to the Court. Absent Wilson's request for re-litigation of the issue, the Court was without any reason and/or authority to consider modification the child custody[7].

14. Babakaeva was not asked any questions about custody, and she was already admonished by Paul H. Wilson not to make any statements to the Court unless specifically asked by the Court. Apparently, Wilson now suggest that Babakaeva should have engaged in litigation

---

[6] The judge presiding at the divorce trial was assigned to the case just before the trial and was not familiar with the history of the case.

[7] The Court accordingly stricked the modification of custody from Schempf's first draft Decree.

with her own attorney over the custody within the action for divorce, which seemed completely futile under the circumstances. Moreover, later Wilson demanded that Babakaeva endorse the draft Order which would deprive her from sole custody and, additionally, Wilson advised Babakaeva that as a result of this modification she would likely be deported (Exhibit 2, WILSON 814) From the e-mail exchange it is clear that it was not Babakaeva advising Wilson about deportation, but Wilson advised Babakaeva that her deportation was "likely occurrence". In the declaration, Paul H. Wilson expressly and affirmatively stated his belief that Babakaeva would be likely deported if she was not a sole legal custodian of a US-born child.

15. First phrase of Paragraph 15 is merely legal conclusion rather than statement of fact. Assertion that "Wilson never agreed to protect Schempf's interest..." is contradicted by reliable evidence admitted by all parties In response to Schempf request for agreement, Wilson endorsed draft Order establishing validity of Schempf's lien on Babakaeva proceeds (Exhibit 2, WILSON 80-82, WILSON 51-52). What makes this request and endorsement particularly improper is the fact that no hearing on the lien in the divorce case was held on February 28, 2008 or any other date, the parties did not come to the Court, evidence was not heard, no testimonies were taken and no arguments were presented (Exhibit 2, WILSON 30). Wilson, by his signature on the draft Order, certified as true a whole set of false assertions, and did so because he was asked to do so by Schempf (Exhibit 2, WILSON 80).

Further, even if the alleged statements of facts of Paragraph 15 were accurate, they would have been not dispositive. The pertinent element of the cause of action for conspiracy is that two or more person combine to achieve unlawful purpose, or lawful purpose by unlawful means. Plaintiff is not required to show that there was "unprofessional request" by one of conspirators and "agreement" of another. As a pertinent element of the cause of action, it is sufficiently to show that the co-conspirators acted together.

16. Babakaeva set forth her response to the allegation of Wilson's allegedly undisputed fact No. 16 in her Cross-Motion for Partial Summary Judgment.

## LEGAL STANDARD

Babakaeva has set forth the applicable summary judgment standard in her contemporaneously filed Memorandum in Support of Babakaeva's Cross-Motion for Summary Judgment and incorporates the same herein by reference.

## ARGUMENT

The argument in support of Babakaeva's Cross Motion for Partial Summary Judgment with the supporting exhibits and declarations, which materials Babakaeva incorporates by reference, is sufficient to defeat Wilson's Motion for Summary judgment. In this response Memorandum, Babakaeva specifically refutes the statements made by the Defendants' Motion.

### A. WILSON'S EXHIBITS ARE DEFECTIVE

#### I. Exhibits Lack Proper Authentication

Wilson's exhibits are not properly authenticated. While some of the documents are already part of records in this and other Courts, copies of the documents which are under exclusive Wilson's control are not admissible without authentication. Therefore, the statements of free checking account, Exhibit 4, should be excluded.

#### II. Declaration Of Bryan Schempf Should Be Excluded

Defendants filed in support of their Motion for Summary Judgment declaration of Bryan Schempf. The declaration is defective and should be excluded.

The declaration is purported to be based on Schempf's "direct knowledge of the information" asserted therein. However, the statements of the alleged facts asserted in declaration constitute or include inadmissible hearsay, speculations, legal conclusion, inadmissible opinions and/or directly contradict well-established facts supported by Wilson's sworn statements and

other written undisputed documents. To the extent that by this declaration Wilson attempt to introduce expert opinion under the guise of a declaration of a fact witness, it is improper.

No evidence is offered of Bryan Schempf's personal knowledge of the facts proffered by the declaration and which are in dispute in this action. Fed.R.Evid.602. Babakaeva asserts the following objection to the specific Paragraphs of the declaration of Bryan Schempf:

2. According to the Agreement and the Court records, Schempf was counsel of record for Sinkine from January 2006 to November 6, 2007. Parole evidence rebutting the terms of unambiguous written contract is not admissible. *Anden v. Leesburg, 237 Va. 453 (1989).*

3. Schempf was not present at Babakaeva and Sinkine's signing the agreement when they directed the financial institution to transfer funds to Wilson's bank account. This declaration is not given during Schemp's employment for Sinkine, and is hearsay. Fed.R.Evid.801(d)(2)(D).

4. On its face, the statement is inadmissible hearsay, includes speculation and unsubstantiated opinion. Particularly improper is the statement purportedly "based of direct knowledge of information" which "was represented to [declarant]" by some identified source under unknown circumstances at unknown time with unknown purpose.

5. The second and third clauses should be excluded. The second clause constitutes inadmissible opinion. The third clause is irrelevant to any issues involved in this action.

6. The second clause represents pure speculation, and the third clause offers inadmissible statement of personal belief[8].

7. Speculation, inadmissible statement of personal belief.

8. The averment of Paragraph 8 stating "it is important to note" constitutes inadmissible personal opinion. To the extent that such overture is included by inadvertence and

---

[8] Such statement is not hearsay only to the extent it is used against Bryan Schempf, Fed.R.Evid.801(d)(2)(B), or Paul H. Wilson, Fed.R.Evid.801(d)(2)(E).

the actual statement should be implied to begin from "I understand", it is irrelevant to any issues of this case and includes inadmissible hearsay within inadmissible hearsay.

9. First clause purports to introduce an expert opinion not properly disclosed in discovery and therefore should be excluded. The second clause is inadmissible as no enforceable agreement[9] is alleged.

10. The part of the statement which constitutes interpretation of the Court Order is inadmissible legal conclusion.

11. Inadmissible opinion.

12. Opinion about whether the request between or among counsel was professional or unprofessional is irrelevant to any issues raised in this case. The statement that "Paul Wilson never agreed to protect [Schempf's] attorney lien interest" contradicts Wilson's prior written statement and the document which was signed by Wilson (Exhibit 2, WILSON80-82, 51-52).

In whole, most of the declaration is inadmissible, and its admissible part either recites the facts already in the record and agreed upon by all parties, or contradicts the well-established facts and documents. Therefore, declaration of Bryan Schempf should be excluded in its entirety.

III. <u>Declaration of Paul Wilson Should be Partially Excluded.</u>

Babakaeva asserts the following objection to the specific Paragraphs of the declaration of Paul Wilson:

---

[9] If the purported agreement were enforceable, it would have been impossible "to renege" on it. If the statement about the purported agreement is intended to show that Babakaeva and/or Sinkine made a promise to compromise a claim on division of Funds, such statement is inadmissible. Fed.R.Evid. 408. Application of Fed. R. Evid. 408 is not restricted to parties who are involved in settlement. *Pioneer v Ottawa Plant Food, 219 FRD 135 (2003)*.

7. The declarant does not assert that a binding agreement was made, therefore the statement regarding purported agreement is inadmissible, see objections to declaration to Bryan Schempf. Wilson withdrew as counsel because of his vacation (Exhibit 2, WILSON 814)

10. The statement "I never agreed to protect Bryan Schempf's attorney lien interest" contradicts Wilson's prior written statement and the document bearing Wilson's signature, see objection to declaration of Bryan Schempf at 11.

For the foregoing reasons, declaration of Paul H. Wilson should be partially excluded.

## B. WILSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT FAILS

To defeat Wilson's Motion for Partial Summary Judgment, it is sufficient to show existence of a genuine issue for trial.

In support of their Motion, Wilson did not purport to assert and prove any affirmative defense. Mainly, Wilson's argument challenges Babakaeva's ability to offer evidence in support of her claims. As shown in Babakaeva's Memorandum in Support of her Cross-Motion for Partial Summary Judgment filed contemporaneously, overwhelming evidence is strongly favors Babakaeva and so one-sided that Babakaeva is entitled to judgment on the issue of liability as a matter of law on Counts I-VII.

Wilson contends that "at least five of [causes of action] are patently frivolous". Such contention is unsubstantiated. Fed.R.Civ.P.12 provides mechanism to test legal sufficiency of the complaint. Wilson did not challenge legal sufficiency of any of the claims within prescribed period and thus waived that argument. Regarding factual contentions, Babakaeva fully answered Wilson's Interrogatory (Doc. 24-2, pp. 5-15; Doc.32-2). Babakaeva also sufficiently disclosed the evidence. Wilson did not entertain a motion to compel production of evidence, and therefore waived a possible argument of disputing sufficiency of the disclosure.

As Babakaeva shows in this Memorandum and in her Cross-Motion for Summary Judgment, the overwhelming evidence is so one-sided that Babakaeva is entitled to partial summary judgment as to liability in her favor. Accordingly, Wilson's Motion for Partial Summary Judgment fails to meet the required standard.

**I. COUNT ONE**

1. The State action does not preclude jurisdiction of this Court over the VCPA claim

Wilson contend that the state action for attorney fee "will likely constitute *res judicata*" for the VCPA claim. Wilson's Memorandum of Law does not cite to any legal authority in support of such contention. Indeed, controlling legal authority provides that the abstention doctrine is not applicable to the VCPA claim. For example, in *Willner v. Frey, 243 Fed. Appx. 744 (4th Cir. 2007)* the Court stressed that "[t]he Supreme Court has recently narrowed the scope of the [Rooker-Feldman] doctrine, holding that it applies only when the following conditions are met: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of "injuries caused by state-court judgments;" (3) the state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff "invit[es] district court review and rejection of those judgments. [citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005); Lance v. Dennis, 546 U.S. 459 (2006).*]" Clearly, *none* of these conditions apply in the instant case[10]. Even if, hypothetically, the State Court rules for Wilson, it will shift only first factor toward Wilson. The counterclaim in Virginia is not compulsory, and the VCPA claim may be resolved independently of the State action on the debt collection. Moreover, the diversity jurisdiction "has its foundation in supposition that, possibly, state tribunal might not be impartial between their own citizens and foreigners." *Pease v Peck 59 US 595 (1856)*, therefore the State debt collection action[11] which had not

---

[10] No final Order is entered in the allegedly related state action.
[11] The State debt collection action was commenced and conducted with intentional, substantial,

12

concluded before commencement of this action should not preclude adjudication of the VCPA claim. Moreover, the State Court, taking *sua sponte* judicial notice, reasoned that in a dispute between a local attorney and a lay citizen, regardless the citizenship, there is a general public perception of the State Court being not impartial and leaning toward local attorneys (Exhibit 12, from 14:10 to 15:23) which is an additional argument against abstention in the instant case.

### 2. The issues raised by Babakaeva's counter-claim are independent from the action for collection of debt

The State Court declined to consider the issue of deceptive invoices. The State Court considered only the issue if the debt was enforceable under the premises that the invoices were accurate. The state Court ruled that it would not entertain consideration about in "mathematics" in the invoices, which is the major issue for the claim of deceptive billing.

### II. COUNT TWO

Babakaeva asserted claim for malpractice on the basis of several grounds: breach of contract by Wilson's improper termination prior to fulfillment of their obligations; breach of contract by making defamatory statements; and breach of contract by adversary motion aggravated by Wilson's failure to mitigate consequences.

### 1. Wilson's improper termination of contract

A day before an important Court proceeding was scheduled which was expected to lead to adjudication of the divorce, Paul H. Wilson informed Babakaeva about Wilson's unconditional intention to terminate performance under the contract on the ground of Wilson's upcoming vacation abroad (Exhibit 2, WILSON 814)[12], which was material breach of contract.

---

frequent and persistent violation of the Federal statute, see *Babakaeva v. Quadros EDVA Case No. 08cv129 (judgment for the plaintiff)*.

[12] Express and/or implied terms of the contract do not provide for Wilson's right to terminate performance for the reason of attorney's vacation.

13

Therefore, Wilson would not protect Babakaeva's rights which would require noticing objection to the expected Order or Decree to preserve them for appeal. Wilson advised Babakaeva to retain another attorney, which advice Babakaeva was compel to follow. As shown in Babakaeva's Cross-Motion, retaining another attorney was necessary and caused Babakaeva expenses which she would not incur if not for Wilson breach of contract.

The material breach of contract by premature termination of performance is the fact within the common knowledge of a layperson. It does not require knowledge specific to the profession of law, and therefore does not require expert opinion.

Wilson cannot establish absence of liability and absence of triable issues regarding Wilson's breach of contract by improper termination of performance.

2. <u>Making motion adverse to Babakaeva's interests and improper advice to endorse draft Order</u>

Wilson contends that they never attempted to abrogate Babakaeva's custody rights. The following exchange transpired at trial (page 88 of the transcript (Doc.65-12, p.89):

> The Court: Let's talk about child custody. You all have agreed on that?
> Wilson: We do not have an agreement on child custody.

Contrary to Wilson's contention, the Court did not bring this issue *sua sponte* -- Judge simply went trough the list of issues that routinely are decided in divorce. Instead informing the Court about the existence of the Order on custody, Wilson presented to the Court: "we do not have an agreement". Further, as a change of circumstances Wilson presented to the Court, as a matter of fact, a purported future outcome of some unidentified immigration proceedings and falsely represented that Babakaeva "is subject to being deported" (Doc. 65-12, p. 90). Only on the ground of such Wilson's presentation the Court made ruling that Babakaeva should be divested from the sole legal custody. Later Wilson advised Babakaeva to endorse the Order which falsely asserted that there was "proper notice" for hearing on the issue of custody. Although Paul H.

14

Wilson knew that the custody issue was of paramount concern to Babakaeva, he advised to sign it and refused to raise objections (Exhibit 7 at 41 and 43). Babakaeva substituted in new counsel who asserted all arguments she claimed Wilson had not before a final decree was ever issued (Doc. 65, p.7). Babakaeva sustained damages due to necessity to retain another attorney in a very short time, which would not be required if not for such Wilson's actions.

3. Defamatory statement at divorce trial

As Babakaeva's counsel, as a contractual obligation Wilson owed Babakaeva duties which were not lesser than a duty of an unrelated party, including duty not to defame. Establishing of existence of such duty and its violation is within common knowledge of a layperson and does not require expert opinion. As Babakaeva shows in Cross-Motion, this defamation lead to adverse ruling on the custody issue and caused Babakaeva damages due to necessity to mitigate consequences.

4. Schempf had information from his own client that Babakaeva faced a risk of deportation

Such Wilson's contention is not supported by proffer of any admissible evidence regarding the purported risk of deportation. However, it supports Babakaeva's allegation that Schempf and Wilson both believed that Babakaeva would be more likely deported if divested from the sole custody of the US child. Because there was no evidence of change of circumstances, Schempf did not have any basis to request change of custody. On the other hand, Wilson's request to modify the Babakaeva's sole legal custody was acceptable to the Court.

An expert opinion is not necessary to establish the legal malpractice where the actions of attorney are intentional and adverse to the client's interests, as fact of breach of duty is within common knowledge of a layperson. Regarding disputed questions of law, expert opinion on such matter is precluded, *Ortiz v. Barrett*, 222 Va. 119 (1981).

For the foregoing reasons Wilson's Motion should be denied as to Count Two.

## III. COUNT THREE

Wilson contend that "statement was not defamatory", without giving any argument in support of such contention, which contention is wrong. Statement that a person "is subject to being deported" imputes conviction in a crime involving moral turpitude, and the procedure of deportation includes incarceration or is necessarily associated substantially similar restriction of personal freedom. Such statement is defamatory under common law.

Babakaeva did not assert claim for defamation based on the events of the May 24, 2007 hearing[13]. Babakaeva's claim for defamation *per se* is based on another Wilson's statement at the completely different forum (See Babakaeva's Cross-Motion for summary judgment at III) Wilson's Motion is completely silent about this occurrence and does not seek Court's determination. As Babakaeva shows in her Cross-Motion, there is sufficient evidence to establish Wilson's liability. Therefore, Wilson's Motion should be denied as to Count Three.

## IV. COUNT FOUR

Wilson presents defense to the claim for conversion asserting that Wilson had right of possession of Funds due to a purported Order of the Hampton Circuit Court directed to Wilson and requiring Wilson to hold Funds. As the purported Order, Wilson represented Babakaeva's final Decree of Divorce.

Wilson does not provide any legal theory why and how the final Decree of Divorce binds an unrelated person who, at the time of the ruling and entry of the Decree, was not a party, counsel and/or agent for any party. Paul Wilson withdrew from the representation of Babakaeva prior to the hearing held on June 15, 2007, in which Paul Wilson did not represent Babakaeva and did not participate. The final Decree of Divorce between Babakaeva and

---

[13] This claim would be precluded by statute of limitation, although Wilson apparently intended to waive such affirmative defense.

Sinkine which memorialized the ruling made at that hearing[14] was entered on June 19, 2007. At the time of entry of the final Decree, Wilson was not a party to the divorce action and/or was not an agent of any party[15] to the action. The Decree was not endorsed by Wilson, was not supposed to be endorsed by Wilson, a copy of draft of final Decree was never sent and/or intended to be sent to Wilson, no notice of entry of the final Decree of Divorce was ever served on Wilson.

The Decree contains the following clause: "It is hereby ORDERED, ADJUDGED and DECREED that ...

A. the marital house ... was sold and the money shall remain in escrow with Paul H. Wilson until further Order of this Court". Wilson offered interpretation that Paul H. Wilson, under penalty of contempt, was obligated to hold the money notwithstanding the joint demand of Babakaeva and Sinkine to return it.

Babakaeva contends that the meaning of the above provision of the Decree, if the Decree is read as whole, was that within 21 days upon entry of the Decree the parties had opportunity to seek modification of the Decree, pursuant to Virginia Supreme Court Rule 1:1, to resolve outstanding property issues and therefore recognized the fact that the proceeds of the sale may be subject to such determination and should be preserved. Because Sinkine, acting by counsel, declined to require division of Funds while the divorce Court had jurisdiction to do so, the Decree was not modified within the time period prescribed by Rule 1:1 and became final. Accordingly, *pendente lite* provisions became ineffective by operation of law.

---

[14] The Court struck all offending parts of the draft decree prepared by Schempf and directed counsel to prepare completely new draft.

[15] Escrow holder is not an agent for any of the parties to escrow – otherwise he would have to obey the orders of the principle, which is inconsistent with the escrow function.

No writ of attachment or/and lien issued by the Hampton Circuit Court and/or served on Wilson which would place Wilson and the trust under jurisdiction of the divorce Court and in the action in which final divorce from the bonds of matrimony had been granted.

Wilson contends that after writing in September to Tarkington and Schempf, Wilson "never heard from Sinkine". At that time Sinkine was represented by Schempf, and Wilson does not provide any reason why he could not illicit any response from Schempf. An obvious explanation is that upon divorce Sinkine did not have beneficial interest in "Babakaeva – Trust" Funds. Tarkington offered to hold the funds on interest bearing account, but Wilson never followed to the request (Exhibit 2, WILSON 74).

Wilson contends that "it was only after the filing of the interpleader action that Sinkine disclaimed any interest in the Funds", which is misleading. Sinkine already was a nominal party in the action for attachment of Funds where Sinkine was named principle defendant.

Wilson contends that "in March of 2010 the funds were paid out to Babakaeva in total". The contention is not supported by accounting. Under the rules of trusts, trustee has burden to support the statement by record showing the balance in the trust just before disbursement, and zero balance in the trust after disbursement. Wilson offered neither. Therefore, the triable issues exist as to the Wilson's responsibility to account for the use of money, accounting for interest and proof that nothing remained in trust.

Therefore, the triable issues exist as to the Wilson's use of money, accounting for interest, and as to the proof that nothing remained in trust. Therefore, Wilson's Motion should be denied as to Count Four.

### V. COUNT FIVE AND SIX

In regard to the claims for of fiduciary duty by breach of trust and related conversion, Wilson has burden of proof on the primary issue of accounting. Wilson did not produce account

18

statements which would be understood by a layperson and showing the amount of Funds and any transactions, including adding accrued interest. Wilson also did not offer an expert opinion which would have introduced evidence sufficient to trace Funds.

Wilson did not produce the ledger entry for "Babakaeva -Trust" and the periodic reconciliation sheets of the nonsegregated assets, as directed by the Order (Doc. 54 ; Doc. 60).

Therefore, the triable issues exist as to the Wilson's responsibility to account for the use of money, accounting for interest and proof that nothing remained in trust.

The facts and arguments in connection with Count Six are presented in Babakaeva's Cross Motion for Partial Summary Judgment and incorporated here by reference. These facts refute Wilson's allegation that Babakaeva could not present any evidence in support of her claim of fraud. Therefore, Wilson's Motion should be denied as to Counts Five and Six.

## VI. COUNT SEVEN

To defeat Babakaeva's claim of Count VII, Wilson introduce self-serving declarations which offer legal conclusion that there was no conspiracy. Wilson contends that Babakaeva has advanced no evidence of the existence of any conspiracy between Wilson and Schempf.

By Memorandum in Support of Cross-Motion for Summary Judgment, Babakaeva introduces sufficient evidence to create genuine issue of material fact supported by the documents which were produced by Wilson in discovery, Wilson's Answers to Interrogatories and Responses to Requests for Admissions. For example, the well-established documents show that Wilson assisted Schempf in attempt to enforce Schempf's attorney charging lien against Babakaeva's funds; and that Wilson's agent acting under direction of Wilson and together with Schempf attempted to re-assign beneficiary interests in Funds from Babakaeva to Sinkine.

Therefore, Wilson's Motion fails as to Count Seven.

## CONCLUSION

For the foregoing reasons, joint Defendants' Motion for Partial Summary Judgment should be denied as to all counts.

Respectfully submitted,

*Tatyana Babakaeva*
Tatyana A. Babakaeva, *pro se*
2124 Criston Dr
Newport News, VA 23602
Phone: (757) 249-3072

## CERTIFICATE OF SERVICE

I hereby certify that on the 3th day of May, 2010 I hand delivered a true and accurate copy of the foregoing Memorandum to

James Shoemaker, Esquire
Counsel for Defendants
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Ave., Suite 300
Newport News, VA 23602

*Tatyana Babakaeva*
Tatyana A. Babakaeva, *pro se*
2124 Criston Dr
Newport News, VA 23602
Phone: (757) 249-3072